IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   *Plaintiff,*

vs.

JASON BRISCOE and
JAMIE HULSEY,

   *Defendants.*

Case No. 16-10155-EFM

**MEMORANDUM AND ORDER**

  On November 18, 2016, Federal, State, and local law enforcement officers executed a search warrant on 215 S. Main Street, in Smolan, Kansas. After searching the residence, police officers entered a recreational vehicle (the "RV") parked behind it that was not listed on the search warrant or described in its supporting affidavit. Inside the RV, the officers found Defendants Jason Briscoe and Jamie Hulsey asleep on the bed as well as guns, ammunition, and drug paraphernalia. The officers arrested Defendants based on the evidence found in the RV.

  Defendants now move to suppress the evidence seized during the search of the RV and all evidence obtained after Defendants were taken into custody. Defendants contend that the search of the RV was unconstitutional because neither the warrant nor the affidavit listed the RV. Because the Court finds that the search of the RV required a separate warrant, the Court grants Defendants' Motion to Suppress (Doc. 35).

## I. Factual and Procedural Background

On November 17, 2016, ATF Special Agent Aaron Chaffee obtained a search warrant to search the "residence, outbuildings and vehicles" located at 215 South Main Street in Smolan, Kansas (the "Subject Premises"). The Subject Premises were owned by Michael Kuehn and his wife. Kuehn was the primary suspect in a lengthy investigation being conducted by law enforcement. In addition to the search warrant for Kuehn's property, law enforcement also obtained a warrant for Kuehn's arrest.

The search warrant application was supported by Special Agent Chaffee's affidavit. The affidavit describes the Subject Premises as a single family residence and states that the area to be searched includes the detached garage and any vehicles within the residence's curtilage. The affidavit discussed Kuehn's use of vehicles to move firearms and drugs across the county. The affidavit also states that Kuehn and his associates hid firearms, ammunition, and drug related items throughout the premises to keep law enforcement officers and thieves from finding it. Although he is not mentioned in the search warrant application or the supporting affidavit, Defendant Briscoe was known by law enforcement to be an associate of Kuehn's.

After obtaining the search warrant, but before its execution, law enforcement became aware that an RV camper was parked on the Subject Premises approximately 10 to 15 feet behind the residence. Special Agent Chaffee testified at the hearing that he was unaware if the RV was occupied before the execution of the warrant. But, a report from Kansas Highway Patrol Officer D.F. Schulte indicates that law enforcement knew the camper was occupied by Kuehn's affiliates before the search. The RV, which was a Ford, was operable and last registered in 2011 to Kevin Redetzke. Redetzke was not present during the search, and his name had not come up during the investigation.

Federal, State, and local law enforcement officers executed the search warrant the morning of November 18 by first entering the residence. After it was cleared, the officers entered the RV. Inside the RV, Defendants Briscoe and Hulsey were asleep. The officers found six firearms inside the RV—two of which were lying next to Defendants easily within their reach. In addition, the officers found a backpack containing methamphetamine, marijuana, prescription pills, a drug ledger, a digital scale, and ammunition. Also on the bed, next to Defendants, were several cellular phones, a wallet containing $1,490 in cash, and Defendant Hulsey's purse, which contained $220 in cash. Defendants were immediately taken into custody.

On December 6, 2016, a federal grand jury returned a four count Indictment charging Defendants with (1) possession of a firearm in furtherance of drug trafficking; (2) possession of a firearm after a felony conviction; (3) possession with the intent to distribute methamphetamine; and (4) possession of a firearm with an obliterated serial number. Defendant Briscoe filed this motion to suppress, and the Court has granted Defendant Hulsey's motion to join the motion to suppress. The Court held a hearing on the motion on April 17, 2017.

## II.    Analysis

Defendants Briscoe and Hulsey move to suppress all evidence seized by law enforcement during the search of the RV and all evidence obtained after they were taken into custody. Defendants contend that the officers' search of the RV exceeded the scope of the search warrant because the RV was not specifically listed on the warrant or its supporting affidavit. In response, the Government argues that the search was authorized because the warrant allows the search of all vehicles on the subject premises, and the RV is a "vehicle."

The Fourth Amendment requires not only that warrants be supported by probable cause, but that they "particularly describe[e] the place to be searched, and the persons or things to be

seized."¹ The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."² To satisfy the particularity requirement in the Tenth Circuit, a warrant "must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort. The requisite specificity of the description differs for rural and urban areas and depends heavily on the facts of each case."³

Neither party nor this Court has found a Tenth Circuit or District of Kansas case that is analogous to this case. The Government relies heavily on the Tenth Circuit case, *United States v. Gottschalk*,⁴ in arguing that the search was proper. In that case, the search warrant authorized the search of a residence.⁵ It did not list the defendant or his vehicle.⁶ Law enforcement had observed the defendant's vehicle on the premises for several days and had seen suspects move items to and from the vehicle's trunk.⁷ During the execution of the warrant, officers found firearms in the trunk.⁸ The defendant moved to suppress the evidence seized during the search of his vehicle.⁹ The Tenth Circuit found the search of the vehicle lawful because a "search warrant authorizing a search of a premises generally includes any vehicles located within the curtilage if

---

¹ U.S. Const. amend. IV.

² *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

³ *United States v. Williamson*, 1 F.3d 1134, 1135-36 (10th Cir. 1993) (quoting *United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991)).

⁴ 915 F.2d 1459 (10th Cir. 1990).

⁵ *Id.* at 1459.

⁶ *Id.* at 1460.

⁷ *Id.*

⁸ *Id.*

⁹ *Id.*

the objects of the search might be located therein."[10] The court further stated that this includes any vehicles under the control of the premise's owner or those vehicles that appear to be under the owner's control based on objectively reasonable indicia.[11]

The Government argues that *Gottschalk* is analogous to this case because the RV was on the property at the time of the search, it had been observed by law enforcement for several days, law enforcement thought it might have contraband hidden inside it, and it appeared the owner of the property had access and control over it. The Government argues that based on these similarities, the officers' search of the RV was authorized. But, the vehicle in *Gottschalk* was a regular automobile. Unlike the RV in this case, it was not being used by the defendant as a place to sleep. The Court finds this difference to be significant, and therefore declines to apply *Gottschalk* to this case.

Other jurisdictions, including both state and federal courts, have addressed whether the search of a recreational vehicle or motor home that is not specifically listed in the search warrant was outside the scope of the warrant. The vast majority of these jurisdictions have found such searches to be authorized by the warrant. Indeed, the Court has found only one case in which the search of a recreational vehicle in this situation was not upheld. In *State v. Martini*,[12] the issue was whether a search warrant, which explicitly authorized the search of a clubhouse, outbuildings, and curtilage, also authorized law enforcement to search a travel trailer located on the same property.[13] The officers discovered the travel trailer a few days before executing the

---

[10] *Id.* at 1461.

[11] *Id.*

[12] 799 P.2d 184 (Or. Ct. App. 1990).

[13] *Id.* at 186.

search warrant but did not get a separate warrant to search it or describe it anywhere in the search warrant.[14] During the execution of the search warrant, the officers found the travel trailer 25 feet from the clubhouse with a pit bull tied to the door and an electrical extension cord running from it to the clubhouse.[15] The officers searched the trailer finding drugs, drug paraphernalia, and a sawed-off shotgun.[16]

The defendant challenged the search of the trailer, arguing that it was not authorized by the warrant.[17] In response, the state argued that the travel trailer was an "outbuilding" and therefore covered under the warrant.[18] The Oregon Court of Appeals disagreed.[19] It defined an "outbuilding" as a "building (such as a stable or smokehouse) separate from but accessory to a main house" and found it questionable that the travel trailer was a building or an accessory to the main house.[20] The court also noted that the officers observed the travel trailer at least two days before the warrant was executed and should have made an effort to obtain a warrant to search the trailer belonging to the defendant.[21]

In the next three cases, the courts found the search of the recreational vehicle or motor home to be lawful even though it was not specifically listed in the warrant. In *Heffernan v.*

---

[14] *Id*. at 185.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*. at 186.

[19] *Id*.

[20] *Id*.

[21] *Id*.

*State*,[22] law enforcement obtained a search warrant to search a single family residence and all vehicles owned by persons in the residence and located within its curtilage.[23] Parked next to the residence was a pop-up camper trailer that was being occupied by the owner's daughter and son-in-law.[24] The trailer was attached to the residence by electrical cords and water hook-ups.[25] When the officers executed the warrant, the daughter and son-in-law were found in the main residence and detained there.[26] The officers then searched the trailer finding narcotics in it.[27] The District Court of Appeal of Florida found that the search was lawful even though the camper trailer was not listed in the warrant.[28] First, the court noted that the trailer was within the curtilage, attached to the main residence, and owned by the occupant of the main residence.[29] According to the court, there was no greater right to privacy in the trailer than there was in the residence.[30] And second, the court determined that the trailer was a vehicle and the warrant specifically authorized the search of vehicles.[31] Therefore, the Court found that the search of the trailer was covered by the warrant.[32]

---

[22] 385 So. 2d 1060 (Fla. Dist. Ct. App. 1980)

[23] *Id*. at 1060.

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*.

[32] *Id*.

In *United States v. Kinney*,[33] the search warrant authorized the search of the defendants' single-story commercial building and specified the objects of the search.[34] The warrant specifically included "all vehicles that are located on the property or that are associated with Unit J in any way."[35] Unit J was a unit inside the building with a glass pedestrian door and a metal, rolling, garage-type door that can hold a vehicle.[36] During the search, the officers found a motor home within Unit J and searched it.[37] The defendants argued that the search of the motor home was outside the scope of the warrant because it was actually their residence and not a vehicle associated with Unit J.[38] The District Court for the Eastern District of Missouri disagreed.[39] It found that the motor home was lawfully included in the search because (1) the warrant specifically listed all vehicles associated with Unit J and (2) the motor home was located inside a commercial building not regularly used for residential purposes.[40] The Court noted that the defendants had not argued or otherwise shown that the motor home was permanently affixed to the property or otherwise incapable of moving.[41] It also noted that one could not determine from viewing the outside of the motor home that it was being used by the defendants as a place to

---

[33] 2005 WL 3213909 (E.D. Mo. 2005).

[34] *Id*. at *2.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*.

[40] *Id*.

[41] *Id*. at *2 n.3.

sleep.[42] Finally, the court stated that motor homes are generally considered "vehicles" by the courts.[43]

The Ninth Circuit also found that the search of a motor home was authorized by a warrant, albeit for different reasons, in the unpublished decision *United States v. Noriega*.[44] In that case, law enforcement obtained a search warrant for the defendant's business address.[45] While executing the warrant, law enforcement noticed a motor home in one of the bays of a garage-type building.[46] The defendant's son told law enforcement that his father owned the motor home, that his father used it for storage, and that it had not been moved for a long time.[47] The agents then searched the motor home finding firearms and drugs.[48] The defendant challenged the search warrant as overbroad because it did not particularly describe the motor home.

---

[42] *Id.* at *2.

[43] In support of this statement, the court cites to the Supreme Court decision *California v. Carney*, 471 U.S. 386 (1985), where the Supreme Court held that the search of a motor home may, in some circumstances, fall within the automobile exception to the warrant requirement. Under the automobile exception, a search warrant is not required to search vehicles if police have probable cause to believe that the vehicle contains evidence or contraband. *United States v. Carroll*, 267 U.S. 132, 153 (1925).
  The Government does not argue that the automobile exception applies in this case, but even if the Government did make such argument, the Court would find that it does not. The RV in this case was not readily mobile. It was parked behind Kuehn's residence, not on a public street or in a public area. Furthermore, officers were able to determine from viewing the outside of the vehicle that Defendants were living in it prior to the search. The RV also was not currently registered or licensed. *See Carney*, 471 U.S. at 394 n.3 (noting that when a motor home is situated in a way or place that indicates it is being used as a residence, the court should look at whether the vehicle is readily mobile, licensed, connected to utilities, and whether it has convenient access to a public road); *see also United States v. Ludwig*, 10 F.3d 1523, 1529 (10th Cir. 1993) (quoting *Carney*, 471 U.S. at 393) (stating that the question is whether the "vehicle was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle" in determining whether the automobile exception applies).

[44] 990 F.2d 1264, 1993 WL 83508 (9th Cir. 1993).

[45] 1993 WL 83508, at **1-2.

[46] *Id.* at *1.

[47] *Id.*

[48] *Id.*

The Ninth Circuit focused on two factors in analyzing whether the search was lawful.[49] First, the court noted that the defendant had full control over the entire premises.[50] The court analogized the situation to those cases where it upheld a warrant describing the premises to be searched as a single dwelling when it was actually composed of two dwellings because the defendant had full control of both dwellings.[51] And second, the court noted that a lawful search of a fixed premise generally extends to every part of the premises in which an object may be found.[52] Because the objects of the search could have easily been hidden in the motor home, the search did not violate the Fourth Amendment.[53]

A review of these decisions shows that the courts' findings are heavily dependent on the facts of each case. And for the most part, these cases can be distinguished from the case at hand. For example, in *Noriega*, the motor home found in the garage was not being used as a residence or place to sleep at the time of the search.[54] And in *Kinney*, the court noted that the motor home was located inside a commercial building, a place not normally used as a residence, and that one could not determine from viewing the outside of the motor home that it was used as the defendant's residence.[55] Here, Defendants introduced evidence at the hearing that law enforcement was aware that Kuehn's associates, who were not the subject of the investigation

---

[49] *Id.* at *2.

[50] *Id.*

[51] *Id.*

[52] *Id.* (citing *United States v. Ross*, 456 U.S. 798 (1982)).

[53] *Id.*

[54] 1993 WL 83508, at *1.

[55] 2005 WL 3213909, at *2 n.3.

that generated the search warrant, were living in the RV before the warrant's execution. Thus, the courts' rationales for upholding the searches in *Noriega* and *Kinney* do not apply here.

Given the dearth of cases involving recreational vehicles or motor homes, the Court also searched for cases involving the search of an apartment or converted garage when those premises are not specifically listed in the search warrant. Again, the determination of whether these searches are lawful is heavily dependent on the facts of the case. For example, in *United States v. Cannon*,[56] the Ninth Circuit held that the search of a rental unit located in a separate building from the main residence required a separate warrant.[57] The search warrant in that case authorized the officers to search any "vehicles, structures, storage areas, residences or containers where marijuana or evidence may be found."[58] Located on the property was a building that the officers believed to be a garage.[59] However, when the officers entered the building, they learned it was a rental unit where the defendant was living.[60] The Ninth Circuit found the search of the rental unit required a separate warrant.[61] The circuit analogized the situation to that of a guest room in a single family home that is rented or used by a third party.[62] To the extent that party had a reasonable expectation of privacy in the room, law enforcement was required to obtain a separate warrant before searching it.[63]

---

[56] 264 F.3d 875 (9th Cir. 2001).

[57] *Id.* at 879.

[58] *Id.* at 877.

[59] *Id.* at 877-78.

[60] *Id.* at 878.

[61] *Id.* at 879.

[62] *Id.*

[63] *Id.*

The Ninth Circuit addressed the issue again in *United States v. Villanueva Magallon*.[64] In that case, the government had a warrant to search the premises located on a certain property.[65] Another garage and house were on the same property.[66] When law enforcement executed the warrant, they entered both houses and found drugs in the house that was not listed in the warrant.[67] The Ninth Circuit found the search to be lawful because the defendant possessed and controlled both houses, and the second house was not being used as a separate residence by an innocent third party.[68]

The Eleventh Circuit briefly touched on this issue in *United States v. Johnson*[69]—an appeal by a defendant who was tried and convicted of several drug related offenses and sentenced to 517 months in prison.[70] The defendant argued that the evidence seized from his house should have been suppressed because he was living in a guest house that was not specifically described in a search warrant to search the property.[71] The Eleventh Circuit disagreed, finding that the description of "all outbuildings and vehicles located on the curtilage"

---

[64] 43 F. App'x 16 (9th Cir. 2002).

[65] *Id*. at 17.

[66] *Id*.

[67] *Id*.

[68] *Id*. at 17-18.

[69] 281 F. App'x 909 (11th Cir. 2008).

[70] *Id*. at 911.

[71] *Id*. at 913.

was sufficiently particular because it necessarily described the guesthouse.[72] Therefore the search was lawful.[73]

The only Tenth Circuit case that the Court could find that touches on this issue is the unpublished decision *United States v. Smith*.[74] In that case, police officers obtained a warrant to search a large steel commercial building for a golf cart, golf cart parts, and an industrial stove or grill.[75] When the officers executed the warrant, they entered the building and found they were in a common area containing a table, gun safe, and numerous boxes.[76] The offices had been converted to bedrooms, and the remainder of the building was a shop.[77] The officers searched the shop area, the bedrooms, and the common area.[78] In the common area, they found a large gun safe containing three sawed-off guns.[79] The defendant was subsequently arrested and indicted with possession of a firearm not registered to him.[80] The defendant moved to suppress the evidence found during the search arguing that the warrant was overbroad and that the search of the safe was unreasonable because original warrant authorized only the search of a storage building and not the separate residential area.[81] The district court denied the defendant's motion

---

[72] *Id*.

[73] *Id*. at 913-14.

[74] 363 F. App'x 629 (10th Cir. 2010).

[75] *Id*. at 630.

[76] *Id*.

[77] *Id*.

[78] *Id*. at 631.

[79] *Id*.

[80] *Id*.

[81] *Id*.

and the Tenth Circuit affirmed.[82] The circuit reasoned that even if the warrant was overbroad, the officers' failure to realize this was objectively reasonable.[83] The building appeared to be a storage building from the outside, it was identified by one address, and the residence area was connected to the shop area.[84] The safe where the evidence was found was also located in the common area.[85] In addition, the circuit noted that the common area, residential area, and shop were not separate dwellings and that the defendant had access to all of them.[86]

There are obvious differences between *Smith* and this case such that the Tenth Circuit's holding does not apply here. The most significant difference is that in this case the officers were aware before executing the warrant that the RV was occupied by Kuehn's associates. In *Smith*, the police did not know, and there was no evidence, that a portion of the building had been converted into separate living areas and that the defendant was living there. In addition, the incriminating evidence in *Smith* was not even found in the defendant's residence. It was found in the gun safe, which was located in the common area of the building. Therefore, the Court declines to extend *Smith* to this case.

---

[82] *Id*. at 631-32.

[83] *Id*. at 632. The Tenth Circuit based its reasoning on the Supreme Court's opinion in *United States v. Garrison*, 480 U.S. 79 (1987). In that case, the police executed a search warrant for the third floor of an apartment building. After finding incriminating evidence against a tenant living on that floor, the police discovered that the floor actually contained two separate units and they searched the wrong one. The police stopped searching the wrong unit and searched the right one. The tenant moved to suppress evidence found in the wrong unit arguing that the warrant was overbroad. 480 U.S. at 1014. The Supreme Court found that the warrant was valid when it was issued because the officers did not know at the time that there were two units on the third floor. *Id*. at 1017. It also found the officers' search of the tenant's unit to be lawful. The Court stated that the validity of the search "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." Because the objective facts available to the officers showed no distinction between the tenant's apartment and the third floor of the building, the search was valid. *Id*. at 1018.

[84] 363 F. App'x at 632.

[85] *Id*.

[86] *Id*.

Overall, the courts' opinions vary widely regarding when searches of recreational vehicles, motor homes, or separate apartments that are not listed in the warrant exceed the scope of the warrant. Although these decisions are not binding on this Court, they do provide some guidance as to which facts are relevant to resolving the issue at hand. And after analyzing the facts in this case, the Court concludes that the officers' search of the RV violated the Fourth Amendment.

The Court relies on several facts in making this finding. First, the RV is not a typical "vehicle." It contains a separate living area that can be used as a place to sleep. Second, the officers did not find Defendants behind the wheel when they searched the RV. They found them asleep in their bed. And third, and perhaps most importantly, the officers knew before they executed the search warrant that Defendants were occupying the RV. This case is similar to *Cannon*, in which the Ninth Circuit concluded that the defendant possessed a reasonable expectation of privacy in a rental unit contained in a separate building behind the house.[87] A reasonable expectation of privacy exists when (1) a defendant has a subjective expectation of privacy in the premises searched and (2) society is prepared to recognize that expectation as reasonable.[88] Defendants had a reasonable expectation of privacy in the RV. Therefore, the officers' search of it required a separate warrant.

Finally, the Government contends that even if the warrant does not meet the particularity requirement, the search is still lawful under the good faith exception of *United States v. Leon*.[89] The good faith doctrine provides that "when police officers act in good faith and reasonable

---

[87] 264 F.3d at 879-80.

[88] *United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002) (citations omitted).

[89] 468 U.S. 897 (1984).

reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[90] The good faith exception is not applicable here. Law enforcement knew that individuals who were not the subject of the investigation were residing in the RV, and thus they should have known that this was a separate residence that required a separate warrant before searching it. Therefore, the Government cannot rely on the good faith exception in arguing that Defendants' motion should be denied.

### III. Conclusion

Neither the Tenth Circuit nor this Court has specifically addressed whether the search of a recreational vehicle is lawful when the recreational vehicle is not listed in the search warrant. Based on the facts of this case, the Court finds that law enforcement should have obtained a separate warrant to search the RV before entering it and arresting Defendants the morning of November 18. Therefore, the Court grants Defendants' motion and suppresses all evidence obtained from the search of the RV and after Defendants were taken into custody.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Suppress (Doc. 34) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 10th day of May, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[90] *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913).